## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUMMER HILL,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **CORINTHIAN CONDOMINIUM** | : | |
| **ASSOCIATION INC,** | : | **No. 20-2242** |
| *Defendant* | : | |

### MEMORANDUM

PRATTER, J.                                                                            MARCH 24, 2021

Summer Hill began working for Corinthian Condominium Association Inc. in November 2007 as a Front Desk Attendant.  After working for Corinthian for over a decade, her employment was terminated.  Ms. Hill's complaint alleges religious and racial discrimination, hostile work environment, and retaliation, under Title VII, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.*  Corinthian filed a motion to dismiss all three claims as well as Ms. Hill's request for punitive damages.  For the reasons that follow, the Court will deny Corinthian's motion.

### BACKGROUND[1]

Ms. Hill's allegations focus on three events that occurred during her almost 11-year tenure at Corinthian.  The first event occurred sometime in 2013.  Nikki Gledhill, who was also a Front Desk Attendant, interrupted Ms. Hill's prayer stating: "I don't have time for this foolishness." (Doc. No. 1 ¶ 20.)  Ms. Hill made a complaint to Corinthian about her co-worker's

---

[1]     The following Background section is drawn from Ms. Hill's complaint, drawing all reasonable inferences in favor of Ms. Hill. *See Rocks v. City of Phila*, 868 F.2d 644, 645 (3d Cir. 1989).

comment, arguing that it was religious discrimination. *Id.* ¶ 21. Corinthian took no step to investigate or address the incident. *Id.* ¶ 23-24.

The second event took place in June 2015. Harvey Nachman, who is a member of Corinthian's Board of Directors, referred to Ms. Hill as "the help" in front of her co-workers. *Id.* ¶ 25. Ms. Hill complained to Corinthian about the statement, asserting that it was race discrimination. *Id.* ¶ 27. On June 16, 2015, Mr. Nachman talked to Ms. Hill and stated: "I'm sorry if my joking was offensive to you. I guess I can't joke with you." *Id.* ¶ 28. Ms. Hill replied: "racial slurs are not a joke to me." *Id.* Mr. Nachman thereafter described Ms. Hill's complaint as "stupid" to Corinthian's General Manager, Gene Zilberman. *Id.* ¶ 29. On June 17, 2015, Ms. Hill made another complaint about Mr. Nachman's comments. *Id.* ¶ 30. In that writing, she argued that Mr. Nachman had used a racial slur in reference to her, and later attempted to make light of Ms. Hill's complaint. *Id.* Corinthian again took no steps to investigate or address Ms. Hill's complaint.

Finally, in May 2018, Ms. Hill's supervisor Kelly Donnelly informed Ms. Hill that Nikki Gledhill was returning to Corinthian. *Id.* ¶¶ 33, 35. Ms. Hill told Ms. Donnelly about Ms. Gledhill's prior conduct and of Ms. Hill's prior complaint. *Id.* ¶ 36. Ms. Hill told Ms. Donnelly that she was afraid that Ms. Gledhill would again act similarly if she were permitted to return. *Id.* Ms. Donnelly responded: "maybe it's you who doesn't fit in here." *Id.* ¶¶ 37-39. Ms. Hill filed another complaint with Corinthian's Board for religious discrimination based on this conversation.

Corinthian did not investigate the incident or discipline Ms. Donnelly. Instead, on May 16, 2018—one day after Ms. Hill and Ms. Donnelly's conversation—Ms. Donnelly issued Ms. Hill a verbal warning for "speaking to another employee about [Ms. Gledhill] and her return

to work at [Corinthian], in a negative and/or discriminatory manner." *Id.* ¶ 41. Ms. Hill

submitted a writing disagreeing with the warning, and argued that it was issued in retaliation for

Ms. Hill's complaint. *Id.* ¶ 44.

On June 12, 2018, Corinthian issued Ms. Hill a "first written warning" for tardiness. *Id.*

¶ 49. Ms. Hill wrote to Ms. Donnelly that the warning was unfounded, and stated: "I have been

here for almost 11 years and have never felt like a manager didn't like me the way I do now,"

and "I don't feel comfortable talking to you because either you deem it unimportant or I get a

write up the next day." *Id.* ¶ 50. Ms. Hill also wrote a complaint of discrimination and

retaliation to the Board, in which she stated that she believed that Ms. Donnelly was "attempting

to progress me through the progressive discipline policy so [that] she can discipline me." *Id.*

¶ 51.

Later that day, Ms. Hill met with Stan Smith, president of Corinthian's Board of

Directors. Ms. Hill gave background about her complaints. Mr. Smith replied that he "did not

want to hear about [Ms. Hill's] complaints of discrimination and retaliation," but reassured

Ms. Hill that her job was not in jeopardy. *Id.* ¶ 54.

Seven days after her meeting with Mr. Smith, Ms. Hill met with Ms. Donnelly and

Lawrence Kahn. Mr. Kahn was a member of Corinthian's Board of Directors. *Id.* ¶ 55.

Ms. Donnelly and Mr. Kahn informed Ms. Hill that she was being fired because of "complaints

from tenants." *Id.* ¶¶ 55-56. Ms. Hill asked Ms. Donnelly to provide examples of complaints

from tenants, to which Ms. Donnelly replied: "I don't have to tell you that." *Id.* ¶ 57. Ending

Ms. Hill's employment without a "second written warning" is contrary to Corinthian's internal

discipline policy. *Id.* ¶¶ 61-62.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original). Rather, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Twombly,* 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer,* 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc. v. UPMC,* 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly,* 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the

4

light most favorable to the nonmoving party.  *See Rocks v. City of Phila*, 868 F.2d 644, 645 (3d

Cir. 1989); *see also Revell v Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality.  The Court

"need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant,*

*Inc. v. Greate Bay Casino Corp*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal

quotation marks omitted).  "[T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining

that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations

omitted).

DISCUSSION

I.      **Admissibility of Documents Not in the Complaint**

The parties have a preliminary dispute over what materials may be considered in

conjunction with a motion to dismiss.  Corinthian's Exhibit A is in fact a collection of multiple

exhibits, and contains disciplinary warnings, discipline reports, printouts or screenshots of

websites allegedly containing customer reviews, and an "incident report." (Doc. No. 10-7.)

Ms. Hill argues that these documents cannot be considered in a motion to dismiss because they

were not included as an attachment to the complaint.  To justify its array of materials, Corinthian

responds that the complaint references the consumer complaints and discipline documents, and

that the Third Circuit Court of Appeals has held that such materials can be considered in

conjunction with a motion to dismiss. (*See* Doc. No. 13 at 1-2 (citing *Pension Ben. Guar. Corp.*

*v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When ruling on a motion to dismiss, a court will generally only consider "the allegations contained in the pleadings." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016). There is a narrow exception whereby a court may also consider a document submitted by the defendant that is "indisputably authentic," provided that "the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

That exception does not extend to the types of documents filed by Corinthian here because Ms. Hill's claims are not "based on" them. No court has undertaken to articulate a bright line for when a plaintiff's claims are "based on" a document, as opposed to merely making reference to it. However, courts have admitted documents that are central to a plaintiff's theory but were either mischaracterized in the complaint or directly undermine a plaintiff's allegations. *See, e.g., Swope v. Northumberland Nat. Bank*, 625 F. App'x 83, 86 (3d Cir. 2015) (district court properly considered documents demonstrating that the bank properly calculated the value of accumulated interest); *In re Caribbean Petroleum Corp.*, 580 F. App'x 82, 89 (3d Cir. 2014) (district court could properly consider filings in other proceedings that demonstrated that a party received notice); *Freedman v. Redstone*, 753 F.3d 416, 423 (3d Cir. 2014) (in shareholder complaint about executive compensation, district court properly considered compensation plan, proxy statement, and certificate of incorporation); *Miller v. Clinton Cty.*, 544 F.3d 542, 550-51 (3d Cir. 2008) (letter that was attached as an exhibit by the defendant could be considered because plaintiff's claim was based "only upon that letter," and its contents decisively undermined plaintiff's case). Nonetheless, and in contrast, courts have not permitted defendants to submit exhibits merely because they are arguably "directly related" to the subjects of the complaint. *See Stine v. Pa. State Police*, No. 1:09-CV-00944, 2011 WL 2066529, at *6 (M.D.

6

Pa. Apr. 19, 2011), *report and recommendation adopted*, 2011 WL 2039574 (M.D. Pa. May 25, 2011).

The accepted standard for what can properly be considered is not met here.  The customer complaints are not central to Ms. Hill's theory of the case.  Indeed, Ms. Hill disputes their veracity.  She argues that these complaints were not the true reason that she was fired, but merely a pretext whereas the true reason was Ms. Hill's race and religion.  This is distinct from cases where the defendant's exhibit had independent legal significance such as a contract, *see Freedman*, 753 F.3d at 423, or a document that clearly undermined the plaintiff's theory even when construing the facts contained therein most favorably to the plaintiff, *see Miller*, 544 F.3d at 550-51; *Caribbean Petrol. Corp.*, 580 F. App'x at 89.  Allowing the defendant to rely on any documents obliquely referenced in a complaint, while limiting the plaintiff to only to her allegations, would turn the Rule 12(b)(6) standard on its head. *Stine*, 2011 WL 2066529, at *6. "[A] motion to dismiss is intended only to test the sufficiency of the complaint's allegations. Evidentiary battles are reserved for summary judgment or for trial." *Id.*  Accordingly, the Court will not consider Corinthian's Exhibit A in ruling on the present motion.

## II.    Race and Religious Discrimination

To establish a case of discrimination on the basis of race or religion, Ms. Hill must show that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination." *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 541 (E.D. Pa. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Corinthian does not dispute that Ms. Hill is a member of a protected class[2] or that she was

qualified for the position.  Corinthian's only argument against Ms. Hill's discrimination claims is

that Ms. Hill did not suffer an adverse employment action.[3]  Corinthian contends she did not

suffer an adverse employment action because "[t]he mere receipt of a disciplinary action or

warning, without any materially adverse effect upon compensation, terms, conditions or

privileges of employment, is not an 'adverse action' under Title VII." (Doc. No. 10-1 at 14.)

But this argument ignores Ms. Hill's allegation that her employment was terminated in

retaliation for having made complaints. (*See* Doc. No. 1 at 11-12.)  Therefore, Ms. Hill has met

this element for purposes of this motion. *See Mingo v. Magic Hat Consulting*, No. 14-5433,

2015 WL 4578912, at *3 (E.D. Pa. July 30, 2015) ("Termination, failure to promote, and failure

to hire all constitute adverse job actions . . . ." (quoting *Walker v. Centocor Ortho Biotech, Inc.*,

558 F. App'x 216, 219 (3d Cir. 2014)).

III.    **Hostile Work Environment**

To establish a prima facie case of a hostile work environment claim, Ms. Hill must show

that: "(1) [s]he suffered intentional discrimination because of h[er] race; (2) the discrimination

was severe or pervasive; (3) the discrimination detrimentally affected h[er]; (4) the

discrimination would negatively affect a reasonable person in the same position; and (5)

respondent superior liability exists." *Farmer v. Aramark Corp.*, No. 11-5621, 2012 WL 346688,

---

[2]      Ms. Hill is a part of two protected classes: she is black, *see Darby*, 216 F. Supp. 3d at 541, and she is a Muslim, *see McIlmail*, 381 F. Supp. 3d at 414.

[3]      Although Corinthian cites the legal rule that a plaintiff must also show that the "adverse employment action gives rise to an inference of unlawful discrimination," (Doc. No. 10-1 at 8), the rest of Corinthian's brief never argues that Ms. Hill does not meet this standard.  Rather, the relevant section of the brief focuses almost exclusively on Ms. Hill's hostile work environment claim.  Therefore, the Court need not decide at this juncture whether Ms. Hill's allegations give rise to an inference of unlawful discrimination.

at *4 (E.D. Pa. Feb. 3, 2012) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir.

1990)). Corinthian argues that Ms. Hill has failed to demonstrate the first and second elements.

### A. Intentional Discrimination

Corinthian argues that Ms. Hill has not alleged sufficient facts to support her claim of

intentional discrimination for two reasons. First, Corinthian argues that the comments by Harvey

Nachman and Nikki Gledhill did not "exhibit[] any racial or religious animus." (Doc. No. 10-1

at 11.) Second, Corinthian argues that the warnings and write-ups issued to Ms. Hill are facially

nondiscriminatory because they do not mention Ms. Hill's race or religion, but rather are based

on Ms. Hill's purported tardiness and on the complaints of residents. *See id.* at 11-12.

Neither of these arguments is determinative. Viewing the allegations in a light most

favorable to Ms. Hill, Mr. Nachman's and Ms. Gledhill's comments are susceptible to an

argument that they exhibit racial and/or religious animus. Ms. Gledhill's comment in 2013

directly interrupted Ms. Hill's religious activity. While Ms. Hill was in the middle of conducting

a prayer, in accordance with her religion, Ms. Gledhill interrupted her and said: "I don't have

time for this foolishness." (Doc. No. 9 ¶ 20.) Construing the facts in the light most favorable to

Ms. Hill, the timing of the statement may fairly be understood to mean that "this" referred to

Ms. Hill's prayer. Indeed, Corinthian does not attempt to offer another interpretation of

Ms. Gledhill's comment. Similarly, construing the facts in a manner most favorable to Ms. Hill,

Mr. Nachman's June 2015 comment had at least racial (and perhaps anti-religious) undertones:

Mr. Nachman, who is on Corinthian's Board of Directors, referred to Ms. Hill as "the help."

(Doc. No. 9 ¶¶ 25-26.)

Ms. Hill also points to the statements of Kelly Donnelly. Ms. Gledhill, whose

"foolishness" comments are described above, had left employment at Corinthian for a time. In

early May 2018, Ms. Donnelly informed Ms. Hill that Ms. Gledhill would be returning to work

at Corinthian. (Doc. No. 9 ¶¶ 33, 35.) After hearing this, Ms. Hill told Ms. Donnelly about Ms. Gledhill's prior comments and about Ms. Hill's complaint, and expressed concern that Ms. Gledhill would again subject Ms. Hill to prejudicial conduct. *Id.* ¶ 36. Ms. Donnelly responded: "maybe it's you who doesn't fit in here." *Id.* ¶¶ 37-39. Not only did Ms. Donnelly not act upon Ms. Hill's complaint concerning Ms. Gledhill, she issued Ms. Hill a "verbal warning" for talking about Ms. Gledhill's "and her return to work . . . in a negative and/or discriminatory manner." (Doc. No. 9 ¶ 41.) Construing the allegations most favorably to Ms. Hill, Ms. Donnelly made discriminatory comments about Ms. Hill, and then disciplined her for making a complaint about that treatment.

The Court is not persuaded by Corinthian's argument that the warnings and write-ups are not explicitly discriminatory, so according to Corinthian, they cannot support a claim for discrimination. To begin with, the Court has already discussed why it is not proper to consider at this time the contents of warnings and write-ups and such. But even if the Court did consider these exhibits, Ms. Hill is not required to show direct evidence of discrimination, like an explicit concession in a write-up that the discipline was issued because of membership in a protected class. "Rare indeed is the case where plaintiff can present to the factfinder the proverbial 'smoking gun'[:] direct evidence demonstrating that an employer rendered a decision based on illegitimate criteria." *David Tarino v. Kraft Foodservice, Inc.*, 1996 WL 84680, at *6 (D.N.J. Jan. 18, 1996). *See also Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 785 (3d Cir. 2007) ("'[S]moking gun' evidence may be rare."). Rather, the Court can consider the timing of the warnings and write-ups, combined with other evidence, to support an inference that Corinthian discriminated against Ms. Hill because of her race and religion. For example, Ms. Donnelly told Ms. Hill "maybe it's you who doesn't fit in here" only one day before issuing a warning.

10

Viewing these facts in the light most favorable to Ms. Hill, the Court concludes that the complaint sufficiently alleges intentional discrimination.

### B. Severe or Pervasive

Next, Corinthian argues that any intentional discrimination was not "severe" or "pervasive." But as Ms. Hill notes, this factor is not amenable to resolution in a motion to dismiss because "[w]hether occasional instances are pervasive is a question that can only be answered after discovery." *Sztroin v. PennWest Indus. Truck, LLC*, Civ. A. No. 17-665, 2017 WL 4355575, at *6 (W.D. Pa. Oct. 2, 2017). For this reason, "Courts in this Circuit have thus 'shown a reluctance to dismiss a complaint at the 12(b)(6) stage when the primary challenge to the hostile work environment claim is whether or not the conduct in question is severe and/or pervasive.'" *Booker v. Nat'l R.R. Passenger Corp.*, 880 F. Supp. 2d 575, 582 (E.D. Pa. 2012) (internal citations omitted). The Court chooses not do so here under the circumstances of this case.

### IV. Retaliation

Corinthian reiterates its argument that Ms. Hill did not suffer an adverse employment action in the context of her retaliation claim. But the standard to overcome a 12(b)(6) motion is even less demanding than in the context of race- or religion-based discrimination case. "[A]n 'adverse action' under the second prong of a retaliation case is not identical to the 'adverse employment action' prong of the *McDonnell Douglas* analysis . . . ." *Gross v. Akill*, No. 13–3373, 2013 WL 5825431, at *10 (E.D. Pa. Oct. 30, 2013). Rather, "in a retaliation case, [a plaintiff] need only 'show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.""" *Id.* (quoting *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006)).

11

Ms. Hill's allegations meet this demand. Most importantly, the termination of Ms. Hill's employment was an adverse employment action because the threat of having her employment terminated might (and likely would) have dissuaded a reasonable employee from making a complaint. *See Kargbo v. Phila. Corp. for Aging*, 16 F. Supp. 3d 512, 532 (E.D. Pa. 2014) ("[I]t is undisputed that Plaintiff was terminated, which is an adverse action."). But Ms. Hill also alleges that she was subjected to various disciplinary notices and reports because of her race and religion, which also qualify as adverse employment actions. *See McLaughlin v. Pennsylvania*, No. 98-CV-2686, 1999 WL 58658, at *5 (E.D. Pa. Jan. 25, 1999) ("[P]lacing disciplinary notices in a personnel file amount[s] to an adverse employment action."). Accordingly, Ms. Hill's retaliation claim survives Corinthian's Motion to Dismiss.

## V.   Punitive Damages

Finally, Corinthian argues that Ms. Hill's claim for punitive damages should be dismissed because she has not shown that Corinthian acted "with malice or with reckless indifference to . . . federally protected rights." (Doc. No. 10-1 at 15 (quoting *Braddock v. SEPTA*, No. CIV.A. 13-06171, 2014 WL 6698306, at *9 (E.D. Pa. Nov. 25, 2014)). But as with the "severe or pervasive" requirement for a hostile work environment claim, this standard is not easily disposed of definitively in a motion to dismiss. "At this early stage, there remains the possibility that the Court could find defendant's alleged 'willful misconduct' to be sufficiently reckless or outrageous to permit punitive damages." *Coloplast A/S v. Oakwell Distrib. Inc.*, No. CIV.A. 15-1592, 2015 WL 3872295, at *5 (E.D. Pa. June 23, 2015). *See also Munoz v. Armstrong Flooring, Inc.*, No. CV 18-1209, 2019 WL 2357759, at *16 (E.D. Pa. June 4, 2019) ("[Defendant] may raise the issue again at summary judgment if, after conducting discovery, no genuine issue of material fact exists regarding punitive damages and [the defendant's] conduct.").

12

Moreover, Ms. Hill does not merely rely on bald assertions of willful misconduct. Rather, her complaint alleges specific conduct that, viewed in the light most favorable to her, leads to the inference that a number of Corinthian's employees intentionally discriminated against Ms. Hill, and that Corinthian was notified of this behavior and made no effort to address or ameliorate it. Indeed, after Ms. Hill notified the Board of these claims, her employment was terminated. Therefore, the Court will deny Corinthian's motion to dismiss punitive damages from the case at this stage. However, the Court will entertain an application to reasonably restrict discovery relating to punitive damages unless and until other discovery more thoroughly sheds light on the efficacy of such a claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss will be denied. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

13